## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSHUA CARNEIL PHILLIPS,** | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **CIVIL ACTION NO. 1:20-00489-KD-N** |
| | **)** | |
| **TREY OLIVER, III, Warden,** *et al.*, | **)** | |
| **Defendants.** | **)** | |

## REPORT AND RECOMMENDATIONS

This civil action is before the Court on motions for summary judgment under Federal Rule of Civil Procedure 56 filed by Defendants Bader Alastal, Shawn Beckford, David Dallas and Daniel Blocker. (*See* Docs. 46, 47, 48).[1] Plaintiff Joshua Carneil Phillips ("Phillips") – who is proceeding without counsel (*pro se*) and *in forma pauperis* ("IFP") – has filed a response (Doc. 49). Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** the motions for summary judgment by Defendants Alastal and Dallas be **GRANTED**, and that the motions for summary judgment by Defendants Blocker and Beckford be **DENIED**.

### I.    *Procedural History*

Plaintiff initiated this civil action under 42 U.S.C. § 1983 by filing a complaint on October 5, 2020, along with a contemporaneous IFP motion. (*See* Docs. 1, 2).[2]

---

[1] The District Judge assigned to this case referred these motions to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R) for appropriate resolution. (3/19/2021, 2/25/2022, 3/28/2022 electronic references).

[2] While *pro se* litigants are afforded liberal construction of their pleadings by the courts, all litigants remain obligated "to conform to procedural rules." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (internal quotations and citation omitted). *See Moon v. Newsome*, 868 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

Following several instructions from the Court, Plaintiff's IFP motion was granted (Doc. 5),[3] as was leave to file an amended complaint. (Doc. 7). Plaintiff timely complied with the Court's instructions and deadlines, filing the operative amended complaint on March 19, 2021. (Doc. 8).

On review of the amended complaint, the Court determined more information was needed to properly address the matter, and ordered issuance of service upon Defendants Alastal, Beckford, Dallas and Blocker, along with instructions for each to file an answer or special report. (*See* Doc. 10). A series of procedural steps ensued following the Court's June 21, 2021, order (*id.*), which culminated in the conversion of Defendant Alastal's answer (Doc. 46) and the joint second special report (Doc. 47) into motions for summary judgment under Federal Rule of Civil Procedure 56 on March 21, 2022. (*See* Doc. 48).[4] Plaintiff filed a response on March 28, 2022, (Doc. 49) and no reply was filed by Defendants. The motion was taken under submission on May 10, 2022, (*see* Doc. 48) and is now ripe for disposition.

## II.   *Factual Allegations*

Plaintiff's amended complaint asserts an excessive force claim pursuant to the Fourteenth Amendment against each of the named Defendants. (Doc. 8, PageID.44). At all times relevant, Plaintiff was an inmate at Mobile County Metro Jail ("MCMJ"),

---

[3] Upon properly notifying the Court of a new free-world address (Doc. 9), Plaintiff was ordered to refile his IFP motion per the requirements of the Prison Litigation Reform Act of 1995. (*See* Doc. 3). Plaintiff timely complied (*see* Doc. 32) and IFP status was again granted on December 13, 2021. (Doc. 39).

[4] On October 26, 2022, upon discovery of an omission in its prior order (Doc. 48), the undersigned entered a corrected order pursuant to Federal Rule of Civil Procedure 60(a), converting Defendants' answers to the amended complaint (Docs. 20, 21, 38, 46) and Defendants' second special report (Doc. 47) into motions for summary judgment under Federal Rule of Civil Procedure 56. (*See* Doc. 51).

and each Defendant was employed at MCMJ as a correctional officer ("CO"). (Doc. 8, PageID.43-47; Doc. 47, PageID.294-95).

The allegations in Plaintiff's amended complaint[5] arise from a "scuffle" on the afternoon of March 28, 2020 (*see* Doc. 8, PageID.43); however, the full story begins several hours earlier, near midnight on March 27, 2020. Plaintiff does not detail this incident in his amended complaint, though his narrative opens by explaining he "was upset because my injuries from the night before were not addressed, and my nose had been bleeding." (*Id*). Thus, a brief review of this incident is necessary to set the scene.

The record reveals that at approximately 11:59 p.m. on March 27, 2020, a "code 00" call[6] was put out because Phillips would not return to his cell after pill call. (Doc. 47-5, PageID.312, 314-15, 317-22). Several COs responded,[7] and ultimately, physical force and a taser shield were used to subdue Phillips, who was allegedly aggressive and refusing to follow orders. (Doc. 47-5, PageID.319-22). Per the incident narratives authored by COs Devante Murphy, Tyrone Smith and David English, after Phillips

---

[5] Plaintiff's amended complaint (Doc. 8) is affirmed under penalty of perjury and substantially constitutes an unsworn declaration under 28 U.S.C. § 1746. Thus, the undersigned opts to treat Plaintiff's amended complaint as an affidavit opposing summary judgment and will credit the "specific facts" alleged in his sworn amended complaint when considering his opposition to the motions. *Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citation and quotation omitted). However, Plaintiff's response in opposition (Doc. 49) does not constitute an unsworn declaration under 28 U.S.C. § 1746 because it does not contain "penalty of perjury" language, does not affirm the truth of the statements asserted therein and is not dated. *See Roy v. Ivy,* --- F.4th --- (11th Cir. 2022), 2022 WL 17087823, *6 (describing statutory requirements for an unsworn statement to substitute for a sworn affidavit). While Plaintiff's response in opposition (Doc. 49) largely reiterates the facts presented in his amended complaint, to the extent this filing asserts new facts, those facts are not credited for purposes of this Report and Recommendation. *Caldwell,* 748 F.3d at 1098. *See Sharma,* 515 F. App'x at 819 ("[U]nsworn statements may (*sic.*) not be considered when evaluating a summary judgment motion." (citation omitted)).

[6] According to Defendants' joint special report (Doc. 47, PageID.296), and Defendant Dallas' affidavit (Doc. 47-3, PageID.309), a "code 00" call means an officer is in need of assistance.

[7] The COs involved in the March 27, 2020, incident are not Defendants in this action.

was restrained, he was escorted to a cell in the 1002 F wedge (administrative segregation) and evaluated by Nurse Hicks for injuries. (Doc. 47, PageID.296; Doc. 47-5, PageID.312-15, 319-22).

The record does not reveal the results of Nurse Hicks' evaluation or the extent of Plaintiff's injuries from this altercation. However, Plaintiff's amended complaint states he "was upset because my injuries from the night before were not addressed, and my nose had been bleeding," (Doc. 8, PageID.43), and in the incident narrative authored by CO English, he admits to "deliver[ing] 1 close hand strike to the face causing BM Phillips to comply." (Doc. 47-5, PageID.319). Additionally, the disciplinary hearing investigation form authored by Corporal L. Jones, reports "B/M inmate Phillips, Joshua stated [']he hit me while I was down on the ground and closed my eye,[']" and Plaintiff's references "getting hit in the eye the night before" in his opposition motion. (Doc. 49, PageID.362). These facts indicate some injury occurred during the altercation on March 27, 2020.

The following day, at approximately 3:21 p.m., CO Alastal was passing out dinner trays when he noticed the food slot on Phillips' cell door was not opened as it should have been. (Doc. 47-1, PageID.304). CO Alastal asked CO Dallas to open the door, and then the "scuffle" broke out. (Doc. 8, PageID.43; Doc. 47-1, PageID.304-05; Doc. 47-3, PageID.308-09; Doc. 49, PageID.362).

Plaintiff does not dispute his role as the aggressor, stating in his amended complaint that he "pushed the door out on [CO Alastal] and knocked lunch snacks

out of his hands." (Doc. 8, PageID.43).[8] According to Phillips, he did so because he "was upset because my injuries from the night before were not addressed, and my nose had been bleeding." (Doc. 8, PageID.43). As this altercation began, another "code 00" call was put out, and several officers responded to assist CO Alastal – among them, COs Dallas, Beckford, Blocker, Price and Corporal Wolf. (Doc. 47, PageID.296; Doc. 47-3, PageID.308-09; Doc. 47-4, PageID.310-11; Doc. 47-5, PageID.325-27).

Phillips and CO Alastal wrestled and ended up on the ground before the other COs were able to step in. (Doc. 8, PageID.43-47; Doc. 47, PageID.297; Doc. 47-1, PageID.304-05; Doc. 47-2, PageID.306-07; Doc. 47-3, PageID.308-09; Doc. 47-4, PageID.310-11; Doc. 47-5, PageID.325-27; Doc. 49, PageID.362). After going to the ground with CO Alastal, Phillips states he was "punched out by the officers" and "hit in the top of the head." (Doc. 8, PageID.43-47). According to Plaintiff's narrative, this use of force sufficiently encouraged him to "giv[e] up fighting," and he rolled over onto his stomach "to let them cuff me." (Doc. 8, PageID.43). However, while attempting to comply with orders by allowing himself to be detained, Phillips states his "face was smashed against the concrete multiple times, cracking my skull," though he does not identify a specific CO as responsible. (Doc. 8, PageID.43).

Phillips states he was then cuffed and put in the corner of his cell where he was "hit and beat" further by COs Blocker and Beckford. (Doc. 8, PageID.43).[9] Phillips

---

[8] Plaintiff also describes his role as the aggressor in his opposition motion, stating: "before [CO Alastal] could close the door, I pushed it open, and put him in a head lock." (Doc. 49, PageID.362).

[9] Phillips further details the events allegedly taking place in his cell after being cuffed in his opposition motion. (Doc. 49, PageID.363-65). Specifically, he alleges his cuffs were removed, and he was then slapped by CO Dallas at least twice "before other officers tried to stop him," and then was struck from behind by CO Beckford. (Doc. 49, PageID.363). His opposition motion also adds allegations that both

maintains that at this point he was detained and defenseless, arguing he "should not have been beat after I was detained and posing no threat." (Doc. 8, PageID.47).

Shortly after being restrained and placed in his cell, a nurse was dispatched to evaluate Phillips for injuries, who decided he should be taken to Providence Hospital ("Providence") for evaluation. (Doc. 8, PageID.43-47; Doc. 47, PageID.297-98; Doc. 49, PageID.362-65). Phillips was taken to Providence by CO Beckford and CO in Training Williams at approximately 4:44 p.m., and they arrived at approximately 5:15 p.m. (Doc. 8, PageID.43-47; Doc. 47, PageID.297; Doc. 47-2, PageID.306-07; Doc. 47-5, PageID.313; Doc. 47-6 PageID.334; Doc. 49, PageID.362-67). At Providence, Phillips underwent evaluation – including an MRI – which revealed facial swelling, a mild maxillary sinus fracture and maxillary sinusitis. (Doc. 8, PageID.43-47; Doc. 47, PageID.297-98; Doc. 47-2, PageID.306-07; Doc. 47-6, PageID.328-54; Doc 49, PageID.362-67). Phillips was discharged at 6:48 p.m. with a prescription for amoxicillin to aid his sinusitis and instructions to rest, take ibuprofen and use ice to help with facial swelling. (*See* Doc. 47-6). Following discharge, Phillips returned to MCMJ without further incident.

---

COs Blocker and Dallas struck him between the nurse leaving his cell and his transport to Providence. (*Id.*). However, as previously discussed, these specific facts cannot be credited for summary judgment purposes because they are unsworn. *See Sharma*, 515 F. App'x at 819 ("[U]nsworn statements may (*sic.*) not be considered when evaluating a summary judgment motion." (citation omitted)), *and Roy*, 2022 WL 17087823 at *6 (describing statutory requirements for an unsworn statement to substitute for a sworn affidavit). Moreover, "[a] complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion for summary judgment." *Pyscsa Pan., S.A. v. Tensar Earth Tech., Inc.*, 625 F. Supp. 2d 1198, 1238 (S.D. Fla. 2008) (citations and internal quotations omitted).

### III.    Defendants' Answers and Special Report

Defendants Alastal, Beckford, Dallas and Blocker each deny the allegations made against them by Phillips and assert available immunity defenses. (Docs. 20, 21, 38, 46). Their jointly-filed special report also includes affidavits authored by each Defendant, shift and use of force reports from March 27 and March 28, as well as Plaintiff's medical records from March 28, each provided in support of their position. (Docs. 47, 47-1 through 47-6).

According to CO Alastal, as he was passing out dinner trays, he noticed the food slot on Phillips' cell was closed. (Doc. 47-1, PageID.304). He asked the Pod Officer (CO Dallas) to open the door, and "[a]s soon as the door opened, Phillips pushed it open, charged out, and put me in a headlock." (*Id.*). CO Alastal states the two wrestled, went to the ground and that Phillips struck him in the chest and head. (*Id.*). Now on the ground, CO Alastal avers he managed to get on top of Phillips and "struck him back in an attempt to subdue and cuff him," though Phillips remained aggressive and resistant. (Doc. 47-1, PageID.304-05). Shortly thereafter, the other COs arrived and "took over" from CO Alastal, who was ordered by Corporal Wolf to leave the scene and start writing a report. (Doc. 47-1, PageID.305). CO Alastal states he left the scene prior to Phillips being subdued and adds that he did not witness the use of "any more force than was necessary to restrain" Phillips. (*Id.*). Further, he asserts neither he nor any other officer "smashed Phillips' face into the ground." (*Id.*).

CO Dallas – the Pod Officer on duty – witnessed the start of the "scuffle." (Doc. 47-3, PageID.308). According to his affidavit, upon receiving the request from CO

Alastal to open the door, he did so, and "Phillips then kicked the door open, and Alastal fell down, and then Phillips jumped on him." (*Id*.). Seeing this unfold, he put out a "code 00" call and rushed to assist by "tr[ying] to pull Phillips off of Alastal." (Doc. 47-3, PageID.309). CO Dallas asserts Phillips was combative and struck both he and CO Alastal until additional officers arrived to help restrain him. (*Id*.). CO Dallas avers it took at least four officers to restrain Phillips, but that "[w]e eventually got him down on the ground and cuffed his hands behind his back." (*Id*.). According to CO Dallas, Phillips stopped resisting once he was cuffed. (*Id*.). Further, he states, "[o]nce we had him cuffed, other than escorting him back into the cell, he was not struck and no force of any kind was used on him." (*Id*.). Though CO Dallas admits both he and other officers used force during the altercation, he characterizes it as "self-defense" and states neither he nor any other officers "used any more force than was necessary to restrain" Philips. (*Id*.). Moreover, like CO Alastal, CO Dallas asserts neither he nor any other officer smashed Phillips' face into the ground. (*Id*.).

Neither CO Blocker nor CO Beckford was in the immediate vicinity when the "scuffle" began, though both responded to the "code 00" call. (Doc. 47-4, PageID.310-11; Doc 47-2, PageID.306-07). CO Blocker maintains that when he arrived on scene, Phillips was fighting and resisting the "two or three other officers attempting to restrain him." (Doc. 47-4, PageID.310). According to his affidavit, CO Blocker moved in to assist, and "together we handcuffed him and placed him back into his cell." (*Id*.). CO Blocker similarly avers no officer smashed Phillips' face into the ground, nor used more force than necessary to restrain and cuff him. (*Id*.). CO Blocker also states that

Phillips stopped resisting after being cuffed, noting "[n]o force at all was used on [Phillips] after he was cuffed other than escorting him into his cell." (Doc. 47-4, PageID.310-11).

CO Beckford states he was present while Phillips was being restrained, but that he "arrived after the incident started and did not take any part." (Doc. 47-2, PageID.306). On arrival, CO Beckford attests he heard Corporal Wolf order CO Alastal to leave the scene and witnessed Phillips kick CO Alastal as he tried to leave. (*Id*.). According to his affidavit, it took "a few more minutes" for the COs to restrain Phillips after CO Alastal's departure, and states he eventually witnessed the COs place Phillips in his cell and remove the restraints from him. (*Id*.). CO Beckford avers that no officer involved in restraining Phillips used more force than necessary to restrain him, and that he did not see anyone smash Phillips face into the ground. (Doc. 47-2, PageID.306-07). Finally, CO Beckford states he and Correctional Officer in Training ("COT") Williams were tasked with taking Phillips to Providence "because we had not been involved in the physical altercation," and closes by noting that no further incidents occurred during that time. (Doc. 47-2, PageID.307).

## IV.   *Legal Standard*

Summary judgment is appropriate and shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion

for summary judgment; the requirement is that there be no genuine issue of material fact."), *and Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (per curiam) ("[S]ummary judgment is appropriate even if some alleged factual disputes between the parties remains, so long as there is no genuine issue of material fact." (citation and internal quotation omitted)). A fact is "'material' if it might affect the outcome of the suit under governing law and it is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (citation omitted).

In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the non-movant, drawing "all justifiable inferences in [its] favor." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation and internal quotation omitted). However, the Court should "avoid weighing conflicting evidence or making credibility determinations." *See Ave CLO Fund*, 723 F.3d at 1294 (citations omitted) (noting "an inference based on speculation and conjecture is not reasonable.").

The summary judgment movant bears the initial burden of establishing the basis for the motion, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and can meet this burden by either: (1) "show[ing] that the non-moving party has no evidence to support its case," or (2) "present[ing] affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *See Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (citation and internal quotations omitted). If a movant carries this initial burden, "the burden shift[s] to the non-moving party to

demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment – only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). A non-movant must point to more than a "mere scintilla" of evidence to overcome a summary judgment motion – and rather, "must produce substantial evidence in order to defeat a motion for summary judgment," *Garczynski*, 573 F.3d at 1165 (11th Cir. 2009) (citation omitted). *See id.* ("A genuine dispute requires more than 'some metaphysical doubt as to material facts.'") (citation omitted)). *See also, Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."). Stated differently, "there must be enough of a showing that the jury could reasonably find for that party … [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotations omitted).

## V.   *Analysis*

Phillips' amended complaint proceeds pursuant to 42 U.S.C. § 1983. (*See* Doc. 8). "To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person

acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (citation omitted). In the present case, Defendants do not dispute that they were acting under color of state law. Each Defendant was employed by and working for MCMJ – a county jail – and thus, they are considered state officials under Alabama law. *See Harrison v. Oliver*, 2015 U.S. Dist. LEXIS 23685, *12-14 (S.D. Ala. 2015) (explaining that, under Alabama law, county sheriff's departments are charged with operation of county jails and legal custody of prisoners, and further, that all sheriff's deputies and officers working in a county jail are legal extensions of the sheriff and therefore considered state officials.).[10]

Further, each Defendant has asserted the defense of qualified immunity. (*See* Docs. 20, 21, 38, 46). Qualified immunity "aims to strike a balance between 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Johnson v. Conway*, 688 F. App'x 700, 705 (11th Cir. 2017) (per curiam) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The defense provides complete protection for "government officials engaged in job duties from individual liability unless they violate 'clearly established [federal] statutory or

---

[10] Plaintiff does not specify whether his claims are brought against Defendants in their official or individual capacities. However, when such a distinction is not clear from the face of a complaint, "[t]he course of proceedings in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Here, the undersigned construes Plaintiff's amended complaint as asserting claims against Defendants in their individual capacities, because, to the extent Phillips seeks to impose liability against Defendants in their official capacities, "the defendants are immune from suit, as the liability imposed, in reality, is on the entity the individuals represent versus the individuals themselves." *Herrara v. Oliver*, 2019 U.S. Dist. LEXIS 25221, *5-6 (S.D. Ala. 2019) (citation omitted). Accordingly, claims against Defendants in their official capacities would be claims against the Sheriff's department, which, as an arm of the state, is immune from suit for monetary damages under the sovereign immunity of the Eleventh Amendment. *Id.*

constitutional rights of which a reasonable person would have known.'" *Id*. (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2013) (brackets in original)). Stated differently, "[u]nder qualified immunity, all but the plainly incompetent or one who is knowingly violating the federal law are shielded from litigation." *Carter v. Butts Cnty*., 821 F.3d 1310, 1319 (11th Cir. 2016) (internal quotations and citation omitted). An official asserting qualified immunity "must first establish that he was acting within the scope of his discretionary authority." *Id*. Once established, the burden shifts to the plaintiff to show qualified immunity is inappropriate, and overcoming qualified immunity "requires a plaintiff to establish both that the officer's conduct violated a constitutionally protected right and that the right was clearly established at the time of the misconduct." *Id*. (citations omitted). *See Johnson*, 688 F. App'x at 706 (noting the court "may consider whether the plaintiff has satisfied his burden in any order." (internal citation and quotation omitted)).

In the present case, Defendants were acting pursuant to their discretionary authority. *See Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (explaining that "a government official proves that he acted within his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." (citations omitted)). Thus, the Court turns to whether Phillips' constitutional rights were violated, and if so, whether those rights were clearly established at the time.

13

Initially, the undersigned notes "[t]here is no generic right to be free from excessive force." *Crocker v. Beatty*, 995 F.3d 1232, 1245 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 845 (2022), (citing *Graham v. Connor*, 490 U.S. 386, 393 (1989)) (internal quotation omitted). Rather, "[f]or purposes of claims under § 1983, three constitutional provisions protect a right to be free from excessive force: the Fourth, Eighth, and Fourteenth Amendments." (*Id*.) (citation omitted). Which constitutional provision depends upon the status of the § 1983 claimant, and "under the Supreme Court's current framework, the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment cover 'those who exist in the in-between—pretrial detainees.'" (*Id*.) (citation omitted).

Phillips's amended complaint asserts an excessive force claim pursuant to the Fourteenth Amendment, and he defines his status as both involuntarily committed and as a pretrial detainee. (*See* Doc. 8, PageID.44-45). However, Defendants special report views Plaintiff as "plainly attempting to state an Eighth Amendment excessive force claim pursuant to the Fourteenth Amendment," (Doc. 47, PageID.295), and goes on to analyze the issue(s) presented by this case under the two-pronged approach from *Hudson v. McMillian*, 503 U.S. 1 (1992). (*See generally*, Doc. 47). This distinction in status is critical following the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389, 393 (2015), which held that Fourteenth Amendment excessive force claims are solely governed by an objective standard, while Eighth Amendment excessive force claims remain governed by the two-pronged objective and subjective components test described in *Hudson*.

14

Because of Phillips' status as involuntarily committed and/or as a pretrial detainee, the objective-only *Kingsley* standard applies here, rather than the two-pronged *Hudson* approach.[11] Under the *Kingsley* standard, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." 576 U.S. at 396-97. Traditionally, whether conduct is considered objectively reasonable turns on the "facts and circumstances of each particular case." *Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). As *Kingsley* instructs:

> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. *See ibid*. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell* v. *Wolfish*, 441 U.S. 520, 540, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

*Id.* at 397. *Kingsley* provides six non-exclusive factors for determining whether force is considered reasonable (or not), including: (1) the relationship between the need for the use of force and the amount of force used, (2) the extent of the plaintiff's injury, (3) efforts made by the officer to temper or to limit the amount of force, (4) the severity of the security problem at issue, (5) the threat reasonably perceived by the officer, and (6) whether the plaintiff was actively resisting. 576 U.S. at 397.

---

[11] The objective-only *Kinglsey* standard applies to Fourteenth Amendment excessive force claims in the context of both a pre-trial detainee and one who has been civilly committed. *See Perez v. Wicker*, 2016 U.S. Dist. LEXIS 84456, * 7 (M.D. Fla. 2016) ("The analysis under the Fourteenth Amendment is the same for both pretrial detainees and those civilly committed." (citations omitted)). *See also, Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (explaining the Fourteenth Amendment "applies to civilly committed detainees like Bilal, who bring § 1983 actions." (citations omitted)).

While this balancing is relatively straightforward in the inmate context, "there is no need in the pretrial-detainee context to determine 'when punishment is unconstitutional,' because a pretrial detainee has not yet been adjudicated guilty and thus may not be punished at all." *Piazza v. Jefferson Cty.*, 923 F.3d 947, 952 (11th Cir. 2019) (citing *Kingsley*, 576 U.S. at 400-01). *See Kingsley*, 576 U.S. at 400 (noting "most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" (citations omitted)). This is not to say no circumstances exist which would justify the use of force upon a pre-trial detainee, because "[o]bviously, 'legitimate interests' – including the need to 'preserve internal order and discipline' and 'maintain institutional security' – may at time require jail officers to use force." *Piazza*, 923 F.3d at 953 (citation omitted). Rather, "if force used against a pretrial detainee is more severe than is necessary to subdue him or otherwise achieve a permissible governmental objective, it constitutes 'punishment' and is therefore unconstitutional." *Id*. at 952.

With this prelude in mind, the Court turns to the facts at hand. The first inquiry, because of Phillips' involuntary commitment/pre-trial detainee status, is whether the use of force against him served a "legitimate interest" or whether it constituted "punishment." It is well-settled that courts give "a wide range of deference to prison officials acting to preserve discipline and security, including when considering [d]ecisions made at the scene of a disturbance." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (internal quotation and citation omitted) (brackets in original). The facts presented here show that the initial use of force by the COs

16

was for a legitimate purpose – restraining an aggressive Phillips, who admits to starting the altercation by pushing the cell door out onto CO Alastal. (Doc. 8, PageID.43). *See also*, n.8, *supra. See e.g., Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("The need for the use of force is established by the undisputed evidence that Bennett created the disturbance.").

The second inquiry is whether the use of force by the COs to restrain the aggressive Phillips was reasonable under the circumstances. For this, the Court looks to the *Kingsley* factors. 576 U.S. at 397. The first, fourth, fifth and sixth *Kingsley* factors favor Defendants' position, the third is a non-factor, and the second favors Phillips. Plaintiff was the initial aggressor and does not appear to dispute Defendants' position that he resisted the COs attempt to restrain him – at least until Phillips "turned over … on [his] stomach" and "had been giving up fighting." (Doc. 8, PageID.43; Doc. 47, PageID.296). Moreover, when considering Phillips had been involved in a separate incident less than 24 hours earlier, it is objectively reasonable for a CO on the scene to have considered Phillips both a threat and a potential a security concern – possibly prior to the incident occurring, and certainly upon his initiation of the "scuffle" with CO Alastal. As to the third factor, the evidence reflects there was no time for the COs to make any effort to temper or limit the use of force.

While the second factor – the extent of the plaintiff's injury – favors Phillips, it is not dispositive, nor does it otherwise shift balance of the *Kingsley* factors away from a finding of that the use of force was reasonable. Plaintiff's allegation that his "face was smashed against the concrete multiple times, cracking my skull" sounds

17

severe at first glance. (Doc. 8, PageID.43). However, Plaintiff's medical records reveal that he suffered a "mild" maxillary sinus fracture and maxillary sinusitis. (*See* Doc. 47-7). From intake to discharge, Phillips was at Providence for less than two hours. (*Id.*). And upon discharge, he was given a prescription for amoxicillin to treat his sinusitis and instructed to rest, use ice and take ibuprofen to help with facial swelling. (*Id.*). The undersigned further notes there is no evidence – apart from Phillips' allegation – that his mild maxillary sinus fracture was suffered on March 28 at the hands of COs Alastal, Dallas, Beckford and Blocker. As previously discussed, Plaintiff suffered injury after being struck in the face during an altercation the prior evening, and his nose was bleeding prior to the altercation with CO Alastal.

Accordingly, the undersigned finds that the use of force on Phillips by COs Alastal, Dallas, Beckford and Blocker while attempting to restrain him was justified, legitimate and constitutional. Further, the undersigned agrees with Defendants' position that "[w]hile Plaintiff's face may have impacted the floor during the altercations (*sic*.) this is hardly inconsistent with the undisputed facts about what happened: a scrum involving Plaintiff and multiple COs going to the ground after Plaintiff undisputedly attacked one of the COs without any sort of provocation." (Doc. 47, PageID.301). Because the use of force by the COs here was legitimate and utilized in an effort to "preserve discipline and security," *Cockrell*, 510 F.3d at 1311 (citation omitted), no constitutional violation occurred.

However, Plaintiff further asserts that, after he was restrained, he "was cuffed[,] put in the corner of [his] cell and hit and beat because 'I would not stop

talking.'" (Doc. 8, PageID.43). Specifically, Phillips states COs Blocker and Beckford hit him in his cell. (Doc. 8, PageID.47).

Following an examination of Fourteenth Amendment excessive force caselaw, the *Piazza* Court remarked that the Eleventh Circuit's "decisions make one thing clear: 'Once a prisoner has *stopped resisting* there is no longer a need for force, so the use of force thereafter is disproportionate to the need.'" 923 F.3d at 953 (emphasis in original). Further emphasizing this point, the Court made clear that "force in the pretrial detainee context may be defense or preventative – but never punitive – the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to comply." *Id*.

Phillips asserts he stopped resisting when he rolled onto his stomach "to let them cuff me." (Doc. 8, PageID.43). Phillips viewed himself as "defen[s]eless" and "posing no threat," at this point because he "had been giving up fighting." (Doc. 8, PageID.47). The affidavit testimony of CO Dallas supports this. (See Doc. 47-3, PageID.309) ("We eventually got him down on the ground, and cuffed his hands behind his back … [o]nce we had him cuffed, other than escorting him back into the cell, he was not struck and no force of any kind was used on him. Phillips stopped resisting once he was cuffed."). So too does the affidavit testimony of CO Blocker. (See Doc. 47-4, PageID.310-11) ("[T]ogether we handcuffed him and placed him back into his cell … [n]o force at all was used on him after he was cuffed other than escorting him into the cell. Phillips stopped resisting after he was cuffed.").

Thus, it is undisputed that once Phillips was cuffed, he was no longer resisting. Accordingly, "there [was] no longer a need for force," such that any additional force used would be "impermissible." *Piazza*, 923 F.3d at 953. However, the record appears to create a genuine question of material fact on this point because Phillips states that COs Blocker and Beckford both struck him after he was cuffed and placed in his cell, (Doc. 8, PageID.47), while CO Blocker states that "[n]o force at all was used on him after he was cuffed other than escorting him into the cell," (Doc. 47-4, PageID.311), and CO Beckford states he "was not physically involved" in the altercation and "did not take any part" in it. (Doc. 47-2, PageID.306). Because the alleged force used by COs Blocker and Beckford after Phillips had been restrained is "impermissible" under Eleventh Circuit precedent, *accord. Piazza*, 923 F.3d at 953, there is no need to determine whether it is reasonable (or not) under the *Kingsley* factors – such force is clearly and objectively unreasonable, and likely unconstitutional. *Id*.

The final question then, is whether such action was "clearly established" for purposes of qualified immunity. *Carter*, 821 F.3d at 1319 (citation omitted). The undersigned finds that such a limitation on the use of force is well-settled in this circuit. *See e.g.*, *Ort v. White*, 813 F.2d 318, 327 (11th Cir. 1987) ("A fourteenth amendment violation occurs in this context where prison officers continue to employ force or other coercive measures after the necessity for such coercive action has ceased." (citation omitted)). Accordingly, COs Blocker and Beckford and not entitled to qualified immunity.

## VI.    *Conclusion*

In sum, and for the reasons set forth herein, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** as to: (1) Defendant CO Bader Alastal and (2) Defendant CO David Dallas. However, the undersigned **RECOMMENDS** that summary judgment be **DENIED** as to: (1) Defendant CO Daniel Blocker and (2) Defendant CO Shawn Beckford, because a genuine dispute of material fact exists as to whether these Defendants struck Phillips after he stopped resisting.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 6th day of December 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**