IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA CARNEIL PHILLIPS,     ) | |
|     Plaintiff,                                    ) | |
|                                                           ) | |
| v.                                                           ) | CIVIL ACTION 1:20-00489-KD-N |
|                                                           ) | |
| OFFICER BLOCKER and OFFICER  ) | |
| BECKFORD,                                           ) | |
|     Defendants.                                ) | |

**ORDER**

This matter came before the Court for a non-jury trial on December 14, 2023. Upon consideration of the parties' arguments and documentary and testimonial evidence presented at trial,[1] the Court makes the following findings of fact and conclusions of law.

**I.     Findings of Fact**

On October 5, 2020, Plaintiff Joshua Carneil Phillips (Phillips)[2] initiated this action against seven (7) defendants (including the Warden at Mobile County Metro Jail (the jail) and other correctional officers) alleging excessive force pursuant to 28 U.S.C. § 1983 and the Eighth Amendment of the U.S. Constitution in relation to a March 28, 2020 "code 00" alert (officer in need of assistance/all available officers respond) at the jail. (Docs. 1, 8 (as amended 3/19/21)). Specifically, Phillips alleges:

---

[1] Witnesses (Joshua Carneil Phillips, Shawn Beckford, Daniel Blocker, and former defendant Bader Alastar); admitted exhibits (Providence Hospital medical records (Doc. 84 (Plf's Tr. Ex. A))).

[2] At the time, Phillips was a pretrial detainee placed in the "disciplinary segregation wedge." Phillips testified that he is a schizophrenic and had been involuntarily committed at the time of the incident.

On March 28, 2020, I got into a scuffle with officer Allastar, at dinner time because I pushed the door out on him and knocked lunch snacks out his hands. I was upset because my injuries from the night before were not addressed, and my nose had been bleeding. During us being wrapped up, officer Dallas joined the scuffle. I was on my butt after being punched out by the officers. I turned over after being hit in the top of head to let them cuff me, I was on my stomach, then my face was smashed against the concrete multiple times, cracking my skull. Then I was cuffed put in the corner of my cell and hit and beat because "I would not stop talking." I was took to hospital, where I took a MRI to reveal my cracked face bone, I want to be payed for my pain, It was the worst time of my life. I felt like I died and came back.

Joshua Carneil Phillips
#0517359
Q: "Your claim continued"                    March 12, 2021
Officer Blocker and Beckford, was also in on hitting me when I was in the cell. I had been giving up fighting when I was on my stomach, I was defenceless, I should not have been beat after I was detained and posing no threat. My mental health is the worst it has ever been, I'm always thinking, the officers are out to poison me or kill me, because of politics. I would have not been harmed if the court hadn't locked me up. After releasing me to out patient treatment, I heard inmates telling me they (officers) was bragging about putting me in the hospital. I had to spend 30 days in the hole, my family wasn't even informed and I could not (use the phone) call anyone. I know I had a concussion, because of the licks I took to the top and back of my head. My eyes where swollen and hurting like I got hit by a truck. I felt like they wanted me to die in the hole, I have PTSD because I got shot on the street but, I never felt the way I feel about the Mobile County police department (Sheriff). I feel like, if god don't help me, I'm going to be killed by the rich people, because I'm Jesus and the devils hunted me down like a "bird", for no reason, no new charges, I was suppose to have been NGRI (outpatient Dec 16, 2019) but the sheriff department, rearrested me four day later after judge Pipes told me, "go home" "stay out of trouble" "we going to be watching you". I fear for my life, every day I'm not free, (I caught (coronavirus Covid-19) in here) I feel like they was trying to finish the job off. "God protect me from evil"
(Jesus) (Joshua Phillips)

2

Thus, per Phillips, after the altercation ended with CO Alastar (no longer in this case), former COs Shawn Beckford (Beckford)[3] and Daniel Blocker (Blocker)[4] used physical force (excessive) against him causing injuries requiring emergency room treatment (facial swelling, a mild maxillary sinus fracture, and maxillary sinusitis). For this, Phillips asserts $250,000 in pain, suffering, humiliation, and emotional distress.

At the outset, and for purposes of clarification: 1) former COs Beckford and Blocker are the only remaining defendants; 2) other altercations with COs occurring before Phillips was returned to his cell in handcuffs (after the altercation with CO Alastar) on March 28th are not at issue; and 3) the only issue before the Court – as framed by Phillips -- is whether COs Beckford and/or Blocker engaged in excessive force against him on March 28th <u>after</u> COs escorted him to his cell, placed him in his cell, and removed his handcuffs.

At trial, Phillips testified about the events of March 27-28, 2020. Phillips stated that his face had been injured at "pill call" on March 27th – after he got into an altercation with CO English and was tasered, hit in the eye, and suffered a nosebleed from CO English. Phillips also admitted that he was in a mentally unstable state (mental breakdown) and instigated the next day's altercation with CO Alastar by jumping on CO Alastar when CO Alastar opened his cell door to give him food. Per Phillips, after the "code 00" was called on March 28th for that altercation, "like 8 or 9" COs responded. At some point during this response, CO Dallas (no longer in the case) (the "main bull") "smashed my head to the concrete … put his hand on the back of my head and hit my head three times on the concrete. Then I was taken – I was cuffed and taken back into the cell."

---

[3] CO Beckford testified that he was previously employed by the Mobile County Sheriff's Department for four (4) years total (not continually). CO Beckford left the Sheriff's Department in 2021.

[4] CO Blocker testified that he had been employed as a CO at the jail for five (5) years at the relevant time. CO Blocker left the Sheriff's Department about 4-5 months ago.

"After my head was smashed into the concrete, I was pretty much done fighting or anything. So .. they put me back in the cell [and] took the handcuffs off .. and that's when I received the extra blow."

Specifically, Phillips stated that at that point some of the COs who responded to the altercation restrained him with handcuffs, returned him to his cell, and once inside the cell with Phillips, removed the handcuffs. Phillips testified that COs Dallas, Blocker, and Beckford were part of this group of officers. According to Phillips, after being placed in his cell and having his handcuffs removed, COs Blocker and Beckford kept telling him to "shut up" and CO Dallas "kept hitting me … told me he'd kill me. Shut up. Don't say nothing else."  Per Phillips, COs Blocker and Beckford then "joined in," hitting him repeatedly ("roughing me up"). Per Phillips, the COs subsequently called for the nurse who came to his cell to check on him, who instructed him to go to the hospital, and so restraints (handcuffs) were placed back on him. However, the COs next instructed Phillips to remove his bloody shirt, and so CO Blocker removed his handcuffs and at that point, as Phillips was removing his shirt and even though he was "not fighting back," he received "an extra blow with a fist" to his face ("upper cut") from CO Blocker.  According to Phillips, CO Blocker then stated "I don't even know why I hit you."

Phillips was again restrained (handcuffs) and taken to the emergency room at Providence Hospital where he was diagnosed with a mild fracture to his facial bone and sinusitis. Phillips testified that he returned to the jail and was in pain with facial swelling and two (2) black eyes. Phillips testified that he does not know if his facial injury was caused by the March 27th or March 28th incident ("I'm not sure"), but believes it occurred when CO Dallas placed him face down on the concrete ("I think I had it when I had my head smashed into the concrete …").

4

Based on the trial testimony[5] of COs Beckford and Blocker, both COs were familiar with Phillips and his mental health issues and felt sorry for him (as he was always housed in the mental health wedge) and tried to help him when they could. Both testified that they were on duty at the jail on March 28th, responded to the "code 00 call," and upon arriving at the scene observed other COs already trying to restrain Phillips (do not recall who) and separate him from CO Alastar (who was being attacked). CO Beckford testified that other COs had already restrained Phillips with handcuffs and he did not put his hands on him at all (he was more of "a stand-by to assist for further incidents"). CO Blocker testified that he assisted with restraining Phillips.

Thereafter, CO Beckford testified that once Phillips was in handcuffs, he remained in the area until Phillips was escorted back to his cell, observed all of the COs leave the cell, and close the door, at which time he returned to his assigned post. To CO Beckford, Phillips looked like he was uninjured. CO Beckford testified that he did not go into the cell with Phillips and the other COs. CO Beckford never saw anyone slam Phillips' face into the ground or sucker punch or hit him in any way that was inconsistent with restraining him. The next time CO Beckford saw Phillips was when he was instructed to transport him to Providence Hospital later that night.[6] At that time, CO Beckford observed minor injuries to Phillips' face, but was unsure if the injuries were from the "code 00" altercation or the prior March 27th incident. CO Beckford stayed with Phillips during his examination and upon discharge, transferred him back to the jail, took him to "medical" at the jail, and then back to his cell. CO Beckford testified that he had no physical involvement with the

---

[5] While CO Alastar testified, his testimony was largely about his altercation with Phillips, not subsequent events. In fact, CO Alastar testified that he left as other COs were placing Phillips in handcuffs and so had nothing more to do with incident, has no personal knowledge of anything else, did not witness any COs smash Phillips face into concrete or use any force other than necessary to restrain him.

[6] CO Beckford testified the "main aggressor" is not allowed to transfer an inmate to the hospital per jail policy.

incident (did not place hands on Phillips or use force on him). CO Beckford believes that Phillips named him in the lawsuit because he took him to the hospital and remembered his face.

CO Blocker testified that once Phillips was placed in handcuffs, he assisted other COs in escorting him back in his cell, assisted COs in removal of his restraints (handcuffs) in the cell, walked out the door of the cell, did not reenter the cell, did not see any other COs in the cell, and left to return to his assigned post. "Once we placed the inmate in the cell and took the restraints off, we moved." CO Blocker testified the door to Phillips' cell was closed when he left. CO Blocker did not see any COs injure Phillips or use any force against him after they placed him in the cell. CO Blocker testified that he never used physical force on Phillips other than assisting in placing him in restraints (along with 5-6 other COs included supervisors), did not punch him, did not slam his face into the floor, and did not punch him or in any way use force on him in his cell after the restraints were removed. CO Blocker also did not recall CO Beckford ever being in Phillips' cell.

## II.     Conclusions of Law

Phillips' amended complaint alleges excessive force by COs Beckford and Blocker in violation of 42 U.S.C. § 1983, in their individual capacities. Phillips v. Oliver, 2022 WL 18216083, *6 at note 10 (S.D. Ala. Dec. 7, 2022) *Report & Recommendation adopted by* 2023 WL 145003 (S.D. Ala. Jan. 10, 2023). "To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005) (citation omitted). There is no dispute that the COs were acting under color of state law, as each was employed by and working for the county jail and are considered state officials under Alabama law. Phillips, 2022 WL 18216083 at *6. Moreover, the COs were acting pursuant to their discretionary authority. Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) ( "a government official

6

proves that he acted within his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" (citations omitted)). Thus, the Court turns to whether Phillips' constitutional rights were violated by COs Beckford and/or Blocker, and if so, whether those rights were clearly established at the time.

As noted *supra*, at the time he was an inmate, Phillips had been involuntarily committed and/or was a pretrial detainee. As already determined in this case, as to his status, for purposes of Phillips' Section 1983 claim the Fourteenth Amendment applies and the objective-only Kingley v. Hendrickson, 576 U.S. 389, 393 (2015) standard governs. As summarized in the R&R:

> Under the *Kingsley* standard, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." 576 U.S. at 396-97. Traditionally, whether conduct is considered objectively reasonable turns on the "facts and circumstances of each particular case." *Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). As *Kingsley* instructs:
>
>> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. *See ibid.* A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell* v. *Wolfish*, 441 U.S. 520, 540,… (1979).
>
> *Id.* at 397. *Kingsley* provides six non-exclusive factors for determining whether force is considered reasonable (or not), including: (1) the relationship between the need for the use of force and the amount of force used, (2) the extent of the plaintiff's injury, (3) efforts made by the officer to temper or to limit the amount of force, (4) the severity of the security problem at issue, (5) the threat reasonably perceived by the officer, and (6) whether the plaintiff was actively resisting. 576 U.S. at 397.
>
> While this balancing is relatively straightforward in the inmate context, "there is no need in the pretrial-detainee context to determine 'when punishment is unconstitutional,' because a pretrial detainee has not yet been adjudicated guilty and thus may not be punished at all." *Piazza v. Jefferson Cty.*, 923 F.3d 947, 952 (11th Cir. 2019) (citing *Kingsley*, 576 U.S. at 400-01). *See Kingsley*, 576 U.S. at 400 (noting "most importantly, pretrial detainees (unlike convicted prisoners)

7

> cannot be punished at all, much less 'maliciously and sadistically.' " (citations omitted)). This is not to say no circumstances exist which would justify the use of force upon a pre-trial detainee, because "[o]bviously, 'legitimate interests' – including the need to 'preserve internal order and discipline' and 'maintain institutional security' – may at time require jail officers to use force." *Piazza*, 923 F.3d at 953 (citation omitted). Rather, "if force used against a pretrial detainee is more severe than is necessary to subdue him or otherwise achieve a permissible governmental objective, it constitutes 'punishment' and is therefore unconstitutional." Id. at 952.

Phillips, 2022 WL 18216083 at *7-8. Moreover, this Court has already concluded, with regard to the COs response to the "code 00" to aid CO Alastar, "the use of force by the COs here was legitimate and utilized in an effort to 'preserve discipline and security,' *Cockrell*, 510 F.3d at 1311 (citation omitted), no constitutional violation occurred." Id. at *9.

The only issue before the Court at trial is Phillips' claim that COs Beckford and/or Blocker violated his constitutional rights by hitting him (using force) in his cell <u>after</u> he had been handcuffed and was no longer resisting. As explained in the R&R:

> … the *Piazza* Court remarked that the Eleventh Circuit's "decisions make one thing clear: 'Once a prisoner has *stopped resisting* there is no longer a need for force, so the use of force thereafter is disproportionate to the need.'" 923 F.3d at 953 (emphasis in original). Further emphasizing this point, the Court made clear that "force in the pretrial detainee context may be defense or preventative – but never punitive – the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to comply." *Id.*

Phillips, 2022 WL 18216083 at *9. Upon consideration, the Court finds that there is a lack of credible evidence to support Phillips' version of events. In contrast, the consistent and credible testimony of CO Beckford and CO Blocker supports the finding that there was no constitutional violation as neither used any force against Phillips after he stopped resisting.

Specifically, CO Beckford's testimony revealed that he never placed his hands on Phillips, had no physical involvement whatsoever with Phillips, never entered his cell, never saw any other officers punch him or slam him to the ground, and observed all the COs leave the cell and close

8

the door, after the handcuffs had been removed. Additionally, CO Blocker testified that he did not recall CO Beckford ever being in Phillips' cell. In stark contrast, Phillips' testified that CO Beckford assisted in escorting him to his cell, where he told him to shut up, and joined in hitting him with COs Blocker and Dallas. Clearly, this is an entirely different version of events.

As to CO Blocker, his testimony indicates that while he was physically involved in placing Phillips in handcuffs, escorting him to his cell, and removing his handcuffs, that is where his physical involvement ends. CO Blocker testified that after removing the handcuffs he left the cell, did not reenter the cell, did not see any other COs in the cell, and returned to his workstation. CO Blocker testified that he never used physical force on Phillips other than assisting in placing him in restraints (along with 5-6 other COs), did not punch Phillips, did not slam his face into the floor, and did not punch him or in any way use force on him in his cell after the handcuffs were removed. Again, however, in stark contrast, Phillips testified that CO Blocker assisted in escorting him to his cell, where he told him to shut up, joined in hitting him with COs Beckford and Dallas, and subsequently -- while he was removing his shirt -- hit him in the face with an upper cut stating "I don't even know why I hit you." Again, an entirely different version of events.

Given the distinct versions of events in this "largely testimonial" case, the undersigned is left with making credibility determinations regarding the relevant facts – a task reserved for Court in this non-jury (bench) trial. "In a case in which the evidence is largely testimonial, like this one, the district court has the advantage of observing the witnesses and evaluating their credibility firsthand." Fischer v. S/Y Neraida, 508 F.3d 586, 592 (11th Cir. 2007). "When, as here, fact findings are based on credibility determinations … only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Jemison v. Simmons, 518 F. Appx. 882, 888 (11th Cir. 2013). And a district

court's findings in a non-jury trial must not be set aside unless clearly erroneous, with the reviewing court giving due regard to the district court's opportunity to judge witness credibility. Brown v. Acting Director of Metro Dade Correctional, 2010 WL 27951, *5 (11th Cir. Jan. 7, 2010); Fed.R.Civ.P. 52(a). Indeed:

> when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson,* 470 U.S. at 575 … *see also Stano v. Butterworth*, 51 F.3d 942, 944 (11th Cir.1995) (explaining, based on *Anderson*, that "we will give even 'greater deference' to factfindings of the district court that are based on determinations of the credibility of witnesses").

Brown, 2010 WL 27851 at *5.

The Court has considered all the testimony and evidence – including the fact of Phillips' mental breakdown at the time and his apparent confusion surrounding which officers were involved in the incident and which incident resulted in his facial injury -- and finds the testimony of CO Beckford and CO Blocker credible. Both COs testified consistently about the facts surrounding placement of Phillips in his cell and that neither touched Phillips after the handcuffs were placed on him and he was returned to his cell – apart from CO Blocker removing the handcuffs. In contrast, Phillips testified about his mental illness, that another CO Dallas was the main "bull" (CO who repeatedly hit him in the cell and slammed his head against the concrete floor before entering the cell), and that he was unsure about which COs were involved as they call "came in" at the same time and started hitting him – "like 4 to 5 officers roughing me up." And while Phillips testified that CO Blocker suddenly "upper-cut fist" hit him in the face when they were in the cell together, this is specifically denied by CO Blocker and contradicted by CO Beckford's testimony. Moreover, CO Beckford never entered Phillips' cell. Thus, given this

credibility determination – and because the only other evidence consists of Phillips' medical treatment records -- there is no support for his excessive force claim.

### III.   Conclusion

Accordingly, it is **ORDERED** that Phillips' claim is **DENIED,** his case is **DISMISSED**, and **JUDGMENT** is entered in favor of Officer Beckford and Officer Blocker and against Phillips.

Final Judgment will issue in conjunction with this Order and Fed.R.Civ.P. 58.

**DONE** and **ORDERED** this the **18th** day of **December 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**